IOWA NATIONAL BANK, Appellant, v. HENRY PYLE et al., Appellees.

**BILLS AND NOTES:** Payment and Discharge—Evidence. Evidence reviewed, and held to show affirmatively that the payment alleged had not been made.

**BANKS AND BANKING:** Deposits—Payment of Check on Improper Indorsement—Estoppel. It is suggested, inferentially, that the drawer of a check who, at the end of the month, receives said check from his banker, with the usual bank statement showing payment of the check, and retains the same without objection for some two years, is estopped to plead that payment was made on an unauthorized, or even forged, indorsement.

**BILLS AND NOTES:** Payment and Discharge—Cancelling Indorse-

3    ment of Payment. One who holds a promissory note as collat-
eral may peremptorily cancel an indorsement of payment when
such indorsement was made without the knowledge or consent
of the holder, and without the receipt by said holder of any
consideration.                                              :

*Appeal from Polk District Court.*—WM. S. AYRES, Judge.

DECEMBER 11, 1917.

REHEARING DENIED MARCH 15, 1918.

ACTION in equity to recover judgment upon a note made
to plaintiff by the defendants Henry and Delilah Pyle for
money loaned, and to foreclose the pledge made to the bank
as collateral security by said Henry and Delilah, of a note
executed by defendant National Life Association to Delilah
Pyle, and guaranteed by all the defendants except the as-
sociation. The trial court found that there was due plain-
tiff from defendants Henry and Delilah Pyle the sum of
$2,259.69, with interest, and that there was due from de-
fendant association to Delilah Pyle, upon the collateral,
$2,334.30, with interest, which amount is subject to the
lien of plaintiff to secure the payment of $2,259.69 and in-
terest found due from Henry and Delilah to plaintiff under
the pledge of the collateral note; that a payment by check
of $2,000, January 23, 1914, by defendant association, was
drawn payable to Delilah Pyle, and was intended to be ap-
plied upon the collateral note of $5,000 made by the associ-
ation; and that said check was paid by plaintiff out of funds
belonging to the defendant association, but that it was not
paid to Delilah, nor indorsed by her, nor through any au-
thorized agent, but that the check was paid by plaintiff
either without indorsement, or on a forged indorsement; and
that, by reason thereof, there is due and owing from the
plaintiff bank to the defendant association $2,262, with in-
terest; that, all parties being before the court, the amounts
due from one to the other should be offset; that the bank

should recover from all defendants, except the association, $70.28 with interest; that Delilah Pyle should recover judgment against defendant association for $75.23, with interest; that the collateral note made by defendant for $5,000, and held by the bank as collateral, should be cancelled and surrendered to the association; that the loan note was paid, and that it should be surrendered to defendants Henry and Delilah.   The costs were apportioned.   The plaintiff appeals.—*Reversed.*

*Nourse & Nourse,* for appellant.

*Clark & Byers, Sampson & Dillon, A. D. Pugh,* and *R. L. Parrish,* for appellees.

1. BILLS AND
NOTES : payment and discharge : evidence.

PRESTON, J.—The controversy seems to be between the plaintiff and defendant association.   The only argument for appellees is by said association.   The principal controversy arises over a $2,000 check.   Plaintiff contends that such check was for back salary to Henry Pyle, an officer of defendant association, and that the check was drawn payable to him; that Henry Pyle drew the money on said check, and that it was not to be indorsed on the collateral note. The defendant association contends that the check in question was drawn payable to the order of Delilah Pyle; that it was to be applied on the note; that it was not indorsed by her personally, or by anyone authorized; that, after the giving of said check, a payment of $3,005.83 was made by the association to plaintiff on the collateral note; and that this was all of that note, except the $2,000 in controversy, and some interest on the $2,000.   The matter in regard to the $2,000 check is the principal controversy in the case, although the defendant association makes a claim that plaintiff did not notify it of the erasure of the indorsement of the $2,000, and that, if it had, the association could have recouped itself.   Plaintiff also contends that, soon after the

payment of the $2,000 check, it, with other checks, was returned to the association, with a statement of checks paid by the association the preceding . month; and that this statement had printed at its head the following:

"Please examine at once. Failure to report errors in this statement within twelve days of its receipt will release the Iowa National Bank from all liability."

Plaintiff asserts that the association made no objection, and made no claim that the check was improperly paid, for about two years, and until after the evidence was closed on the trial of this case, when its amendment to answer was filed. ·Plaintiff pleads an estoppel against the association to now claim that the check was not properly indorsed and paid. After the check was returned to the association, it was lost. The $5,000 note has, at all times since it was deposited with plaintiff as collateral, been held by the plaintiff bank as such collateral security.

The execution of the two notes is admitted by all the defendants. The answer of Delilah Pyle avers the payment of interest on the collateral note, and $3,000 principal, and avers that there was due thereon, September 15, 1915, $2,583.34, with interest. She admits that there is due from herself and the defendant Henry Pyle to the bank on the loan note the sum of $2,000, with interest. In a cross-petition, she alleges that there is more due upon the note of the association which the bank holds as collateral than there is upon the note she and her husband, Henry Pyle, executed to the bank, and she asks judgment against the association for the amount of the collateral note, subject only to the lien of the plaintiff bank for the debt due it. The answer of the association, filed before the trial, admits the execution of its $5,000 note to Delilah Pyle, but says it has neither knowledge nor information sufficient to form a belief as to whether it was pledged to the plaintiff as collateral, and, by way of cross-petition, pleads payment on Jan-

uary 23, 1914, of $2,000 by the check before referred to. Issue was joined by plaintiff and the association upon the material allegations of Delilah Pyle's cross-petition; also by the plaintiff upon the allegations of the cross-petition of the defendant association. Such were the issues at the commencement of the trial.

When the evidence was all in, and the parties had rested, the association amended its answer and cross-petition, withdrawing Division 2 of its prior answer, and alleged, among other things, the issuance of the $2,000 check on January 23, 1914, and that, on January 24, 1914, the bank delivered the collateral note to Henry Pyle, who made the following indorsement thereon:

"January 24th, Received $2,000 on the within note.

"Henry Pyle."

It was further alleged that Henry Pyle then returned the collateral note to the bank, which, at the time, erased said indorsement and refused to recognize it; that plaintiff did not advise it of said transaction until after Henry Pyle had severed his connection with the association, and that, had it done so, the association could have recouped itself, wholly or in part, from defendants Pyle; that, if the check was indorsed at the time it was paid by the bank, it was indorsed by someone who had no right or authority to indorse the same, and that it was, therefore, wrongfully paid out of the funds of the association on deposit with plaintiff. Said answer further alleged that, if the said $2,000 indorsement was made on said note by Henry Pyle, he was at that time the president and executive managing officer of the association, and if the $2,000 check payable to Delilah Pyle was, in truth, actually indorsed by her, or by someone authorized by her, or the proceeds were received by her to apply upon the collateral note, and the defendant Henry Pyle was authorized to act as her agent in the matter, then the indorsement of $2,000 on the collateral note

by Henry Pyle when it was in his possession, as the agent of Delilah, which possession was consented to or made possible by plaintiff, could not be cancelled by the plaintiff bank without the consent of the association; that plaintiff, having carelessly allowed Henry Pyle to obtain possession of the note and indorse said payment thereon, and having failed to notify defendant of the cancellation of the indorsement, has waived the right to, and is now estopped from claiming that said indorsement was not properly made and that it should not be allowed as a payment as against the plaintiff.

After the filing of this amendment to answer, the case was reopened, and further testimony taken. During all the time covered by the transactions herein, the defendant association kept two checking accounts at plaintiff bank, one denominated "Benefit Fund," and the other, "General Fund." There are some other facts which should be referred to as briefly as may be, before taking up the discussion of the questions involved.

It appears that, at the time the loan note was executed by defendants and the collateral note turned over to plaintiff, defendant Stevenson was then, and for some years thereafter, a director of defendant association, and defendant H. Percival Pyle was the vice-president. Henry Pyle, the husband of Delilah Pyle, was at that time, and at the time of the indorsement on the collateral note of the $2,000 by him, and for some months thereafter, or until March 14, 1914, the president and the general manager of the association, and was, or had been, a director therein. There is evidence that the association was referred to as a one-man company, and that Henry Pyle had charge of and directed the entire thing. He gave general directions to all the employes of the company. It is admitted by defendant Delilah Pyle that her husband, Henry, was her agent, and had entire charge of her business in connection with the matter

under consideration; and her husband testifies that he generally did her business, under her general supervision and direction, and that he never did any business without her knowledge, and that, with her knowledge, he was acting for her in the matters in controversy. The business in question was all transacted by Henry Pyle, so far as her end of the business was concerned. She says she never authorized him to sign her name. She says, further, that she did not herself personally ever ask the association to pay the interest on the collateral note, nor ask them to pay the principal. In December, 1912, the association paid the interest on the collateral note by a check drawn on plaintiff bank, payable to Henry Pyle, signed with the name of the defendant association, by H. Percival Pyle, Vice-President, and Guy Baker, Secretary, which check was indorsed by Henry Pyle and paid in due course by the bank. In the same month, the association made another payment of interest on said note in like manner, except that the check was signed by the association, by Henry Pyle, President. In June, 1913, the association drew a third check, drawn in the same way, the check being signed by the association, by Henry Pyle, President. Both the last named were duly indorsed by Henry Pyle, and proper indorsements made on the collateral note of all three payments of interest. As said, on January 23, 1914, the $2,000 check in question was drawn, by the auditor of the defendant association. We shall refer in a moment to the disputed fact question whether the check was payable to Delilah Pyle or Henry Pyle. It is shown that Henry Pyle either drew the money on this $2,000 check himself, or deposited it to his own credit. The plaintiff bank did not receive it. Henry Pyle made an indorsement of the $2,000 on the collateral note, which then belonged to the plaintiff bank, under the following circumstances:

Mr. Blackburn, plaintiff's cashier, testified that, at the time of the indorsement of the $2,000 on the collateral note,

January 14th, nothing was paid to the bank, and that no part of it was ever paid to the bank, and that he did not know that the indorsement was made there by Henry Pyle, at the time it was made. He says:

"Mr. Pyle came in the bank one afternoon, I believe, and asked to look at the collateral note that was attached to the original note. I gave it to him, and he stepped over to the desk, and in a few minutes he handed it back to me, and I noticed the indorsement, and I told him at the time that we had not received any money, so we could not allow the payment. I erased it, and told him we could not allow it without the payment to us. By erasing, I mean the pencil marks that made a line over or through the indorsement. The erasure that I refer to is the pencil and ink marks that is made over the indorsement on the back of the note. At the time the indorsement was made, Mr. Pyle was at the desk, and I did not know of it until after it was put on there. The defendant association knew we held this note as collateral, and they had known it for a couple of years at least before the indorsement by Henry Pyle. I presume Mr. Pyle had this note three or four minutes. He did not take it out of the bank; he just stepped over to the little desk in the banking room of plaintiff's bank, ten or fifteen feet from my desk. The indorsement dated January 24th was made in March, 1914."

Henry Pyle testified in regard to this matter as follows:

"The indorsement of the $2,000 is in my handwriting. I made that indorsement in the plaintiff bank. I just asked for the note there, and stepped to the desk there, and I wrote the indorsement on it. After I made the indorsement, I gave it to Mr. Blackburn, and he said they would not allow any indorsement to be made. He crossed it off. He said they had not received the money, and they would not allow the entry to stand. Previous to this indorsement,

I did not receive $2,000 from the defendant association to
be paid on this note.   Before the indorsement, I received
$2,000 from the defendant association, and it was paid to
me on account of my salary as director.   It was back salary
that had accrued up to the time it was drawn.   At that
time, I was a member of the board of directors, and presi-
dent of the defendant association.   I know, of my own per-
sonal knowledge, that there was and is resolutions of the
board of directors voting salaries to the directors. Mr. Biggs
was crowding me to the point that he thought it ought to be
done, and it was under his pressure that I went down there;
and when the bank would not allow it, that was just as sat-
isfactory to me, because I did not want to do it anyhow.   I
thought I had this money, and it was mine."

It is admitted that plaintiff did not notify the associa-
tion of this transaction, but Henry Pyle was, at that time,
the president and managing officer of the defendant asso-
ciation, and it is contended by appellant that Henry Pyle's
knowledge was notice to the association.   This might be
so, under some circumstances.   Appellant also contends
that, if there was any wrong in the matter, it was the
wrong of Henry Pyle, the general agent of the association,
and of his wife, Delilah Pyle, and that he obtained and
holds the full benefit of the $2,000 paid by the plaintiff bank
upon the check.   Appellant contends further that, under
such circumstances, the association should not complain of
its general agent's wrongful act, and especially that Henry
Pyle personally should not obtain a benefit by offset be-
cause of this act, if it was wrongful.

It should have been said that defendants Delilah and
Henry Pyle admit in their answer that there is $2,000 due
plaintiff on the loan note.   None of the defendants except
the association complain of the payment of the check.   As
before stated, plaintiff returned to the association a state-
ment of checks paid during the month of January, 1914,

and the evidence shows that, when the statement was returned, the association's clerks, under the direction of its auditor, examined it with the returned checks; and the auditor testifies of this examination that it was made under his direction, and that the $2,000 check in controversy was returned by the bank with this statement; that it was necessary for it to do that, to balance the account; and Mr. Spencer, a witness for the defendant association, testifies that he saw this check in the files of the association during an examination made by him some time between February 24 and 28, 1914. The officers and employes of plaintiff bank testify that the bank never paid any checks of the association that were not properly indorsed, and that they never received any complaint of such payment, or that any of the association's checks were cashed without proper indorsement. It is contended by appellant that there is no evidence showing that the $2,000 check was not properly indorsed, when paid by the bank. As we understand it, the only claim in reference to this on the part of the association is that the check was payable to Mrs. Pyle, and that she says she had never authorized her husband specifically to 'sign her name. It is claimed by the plaintiff that Henry Pyle was the agent for his wife, and that, even though the check was made payable to her, he had the right to indorse it, and the bank to pay.

We think there is force in plaintiff's claim at this point; but, after a careful reading of the record, we think it is satisfactorily shown, by the clear weight of the evidence, that the check was, in fact, drawn payable to Henry Pyle. This being so, the bank had the right to pay, and Henry Pyle had the right to receive, the money on the check. If this is so, then it cannot justly be claimed that the $2,000 should be credited on the collateral. As stated, Henry Pyle was claiming that this was his own money, and drawn for back salary as director. He so testifies, and the

minutes of the defendant association were introduced in evidence, showing that the directors were to receive a salary. It is true, there is parol evidence on behalf of defendant association that the directors agreed not to draw a salary, and some of them did not do so. However this may be, if the check was drawn payable to Henry Pyle, he had the right to cash it, and the plaintiff should not be held guilty of negligence in paying it.

I.    Taking up, now, the evidence as briefly as may be, in regard to the question as to who was the payee of the $2,000 check. This, as are most of the other questions in the case, is a question of fact; but, as we regard this the turning point in the case, we shall set out the evidence in regard to it a little more fully than the evidence on other points; but we shall not take the time or space to set out the evidence in full, or all the circumstances, pro and con, bearing on the question. We have read the record carefully, and we are satisfied and find that the check was payable to Henry Pyle.

Mr. Spencer, examiner of the insurance department of the state, testified that he saw this check in February, in the office of the defendant association, and that it was payable to Delilah Pyle: he did not notice the indorsement on the back of the check. He further testified that, on March 16th, the day after Henry Pyle ceased to be president of the association, he again examined the defendant association, for the auditor of state, and attempted to run down this $2,000 check and get the details and the indorsement; but the check was not found, and it was never afterwards found or produced on the trial, although called for; and there is evidence that search was made for it, and it could not be found. The last known of it, it was in possession of the defendant association.

The auditor of the defendant association testifies that, on January 23, 1914, the date of the check, at the instance

of Henry Pyle, he drew a check upon the account of the association in the plaintiff bank for $2,000; that he does not remember to whom the check was payable, but, knowing of the note of the association to Delilah Pyle, he entered the check upon the Check Register of the association as payable to Delilah Pyle; and that, from the entry thus made in the Check Register, the item was carried into other books of the defendant association. He testifies that, after he drew the check, he delivered it to Henry Pyle. He says that no one instructed him to make the entry in the Check Register as it was made; that it was simply his understanding, because of his knowledge of the Delilah Pyle note, and he thought it must be on that. He says he made the notation without question as to some other matters, being involved; that the entry was based on his understanding of the transaction; and that, if the entry in the Check Register was not in accordance with the facts, that would go to all the subsequent entries in the books.

There may be some collateral circumstances bearing upon this point, but this is the substance of the testimony offered by the defendant association in regard to its claim that the check was payable to Delilah Pyle.

On the other hand, Henry Pyle testified that this check was made payable to himself, Henry Pyle, and that he had drawn it and received it on account of back salary, under resolutions of the board of directors; that the check was not drawn or received as a payment on the collateral note. The secretary of the association testified that he signed this check for $2,000 at the request of Henry Pyle, and that it was payable to Henry Pyle. Mr. Pyle testified further that, before having this check drawn to himself, he talked with Mr. Stevenson, Mr. Doty, and Mr. Hager, of the association, about drawing it.

Mr. Hager testified that Henry Pyle talked with him about indorsing the $2,000 check on the collateral note held

by the bank, and that Pyle told him that the check was drawn payable to him, Henry Pyle, and that he had cashed it at the plaintiff bank; and that the question was whether Pyle had the right to take the check and cash it, instead of applying it on the note; and that Mr. Hager told him that, if the check was drawn to him (Pyle), and the association was owing him a salary to the amount of the check, under proper resolution, it was his money, and he had a right to cash it.

As stated, all the three checks drawn for the payment of interest on the collateral note were payable to Henry Pyle, and indorsed by him and paid by the plaintiff bank. These checks were for interest on the collateral note, accrued before the loan was made by the bank to the Pyles, or before any interest other than the original discount fell due on the loan note. Henry Pyle was transacting the business in regard to these notes. There may be other circumstances bearing upon this question.

II. We think there is force in plaintiff's claim that, even though the check was drawn to Delilah Pyle, and not properly indorsed, or if the indorsement was forged, the association, by its conduct and neglect for about two years after the bank returned the check paid, and until after the association had lost the check and led the plaintiff to believe the check was properly indorsed when paid by the bank, is now estopped and precluded from asserting any defense of that character. Appellant cites, as having some bearing, Section 1889-a, Code Supplement, 1913. But in view of the fact that we find the check to have been payable to Henry Pyle, we shall not further discuss this point.

2. Banks and Banking: deposits: payment of check on improper indorsement: estoppel.

III. Appellant contends, and cites us to the evidence and figures to show, that the defendant association paid to Henry Pyle more than $2,000 after it had notice and an

opportunity to recoup itself. But we do not feel justified in going into this matter further.

**3. BILLS AND NOTES: payment and discharge: cancelling indorsement of payment.** IV. A further suggestion in regard to the indorsement of $2,000 on the collateral note by Henry Pyle, and the association's claim that it was not notified of the erasure.

It seems to us, under the circumstances shown in regard to the making of this indorsement, that it was not a good indorsement in the first place. He received the note for the purpose of looking at it, according to the testimony, and the plaintiff did not consent to any such indorsement's being made. The note belonged to the plaintiff, and it had not received the money. Henry Pyle had no right to indorse a payment of $2,000 on plaintiff's note without the consent of plaintiff, under the circumstances shown. At the time the indorsement was made by Henry Pyle, he was claiming that the $2,000 belonged to him, and that the check was not drawn for the purpose of making a payment on the collateral note. So far as this transaction is concerned, he was a mere interloper, and his act was not binding upon the bank.

Under the record, it is very clear to us that the equities are with the plaintiff. The trial court should have rendered its decree against the defendants on the loan note, and refused to allow the credit of $2,000 on the collateral note, and decreed a sale of the collateral note.

The judgment and decree of the trial court is reversed and remanded for a decree in harmony with this opinion, or plaintiff may, at its election, have a decree in this court.— *Reversed.*

GAYNOR, C. J., WEAVER and STEVENS, JJ., concur.